**NEIL HOUSE HOTEL COMPANY, Plaintiff Appellant, v. COLUMBUS (City) et al., Defendants-Appellees.**

Ohio Appeals, Second District, Franklin County.

No. 3649. Decided January 18th, 1944.

Joseph F. Hogan, Columbus, D. Curtis Reed, Columbus, for Plaintiff-Appellant.

John L. Davies, City Attorney, E. W. McCormick, and Richard W. Gordon, Sr., Asst. City Attorneys, Columbus, for Defendants-Appellees.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law and fact from a declaratory judgment of the Common Pleas Court of Franklin County to the effect that certain sections of an ordinance No. 395, of the City of Columbus, are valid as they relate to the rights of plaintiff-appellant as a holder of liquor permits.

The City raises no question as to the right of the plain-

tiff to invoke the jurisdiction of the court under the Declaratory Judgments Act on the facts appearing nor to the form of the appeal to this court. We, therefore, give no consideration to either of these questions.

It is the claim of the plaintiff that Sections 8, 9, 13, and 14 of the Columbus ordinance, passed October 14, 1942, conflict with 6064-3, 15, 20, and 22, GC, and Regulation No. 30 of the Board of Liquor Control of the State of Ohio, in effect as of the date the ordinance was effective and are therefore invalid.

Section 8 of the ordinance makes it an offense for the holder of a liquor permit, Class C-1, C-2, D-1, D-2, D-3 or F, to sell beer or intoxicating liquors or to keep open any place where such beer or intoxicating liquors are sold between the hours of twelve o'clock midnight and 5:30 o'clock A. M. Section 9 is identical with Section 8 except that it has application to liquor permit holders in Class D-3a or D-5. Section 13 refers to the same permit holders as Section 8 and makes it an offense to permit any person to drink any beer or intoxicating liquors on the premises designated in such permit between the hours of 12:00 midnight and 5:30 o'clock A. M. and Section 14 is identical with Section 13, except that it has application to the holders of permit Class D-3a or D-5.

The plaintiff is the holder of Permits D-1, D-2, D-3, and D-3a issued by the Department of Liquor Control of the State of Ohio pursuant to the provisions of 6064-15 GC. Columbus is a charter city and the ordinance under consideration is to be tested in the light of the powers vested in municipalities under Sec 3, Art XVIII of the Ohio Constitution:

"Municipalities shall have authority to exercise all powers of local self government and to adopt and enforce within their limits such police, sanitary and other civil regulations as are not in conflict with general laws."

The subject matter of the legislation under consideration is not of purely local concern but of state-wide cognizance as to which the state, under its police power, has promulgated comprehensive legislation as found in the Liquor Control Act, State, ex rel., O'Brien, 130 Oh St 23, which is a general law; Leis v The Cleveland Ry. Co., 101 Oh St 162. The question then for determination is whether or not the sections of the ordinance challenged, as they affect the plaintiff, are in conflict

with the general laws as found in the Liquor Control Act. If they are, they may not be enforced; otherwise, they are valid.

Fitzgerald v Cleveland, 88 Oh St 358.

Schell v DuBois, 94 Oh St 93.

Greenburg v Cleveland, 98 Oh St 282.

Cleveland Telephone Co. v Cleveland, 98 Oh St 358.

Leis v Cleveland R. Co., 101 Oh St 162.

State, ex rel. Cuyahoga Heights v Zangerle, 103 Oh St 566.

Fortune v Civil Service Com., 136 Oh St 385.

Cincinnati v Gamble, et al., 138 Oh St 220.

State, ex rel. Driscoll v Cull, 138 Oh St 516.

The specific test, as well set forth in Village of Struthers v Sokel, 108 Oh St 263, is as follows:

2nd syllabus:

"In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa."

To like effect:

Youngstown v Evans, 121 Oh St 347.

Cincinnati v Sandow, 40 Oh App. 319.

American Committee on Maternal Welfare, Inc., et al. v City of Cincinnati, et al., 11 O. O. 371.

Kissler v Warren, 12 O. O. 322.

Sec. 6064-2 GC creates the Department of Liquor Control. The powers and duties of the Board are set forth in 6064-3 GC, among which are the following:

"1. To adopt and promulgate, repeal, rescind, and amend in the manner herein required, rules, regulations, standards requirements and orders necessary to carry out the provisions of this act, including the following:

(i) Rules, regulations and orders consistent with the provisions of this act, with reference to sales of beer and intoxicating liquors on Sundays and holidays and with reference to the hours of the day during which and the persons to whom intoxicating liquors of any class may be sold, and regulations with reference to the manner of sale." (Emphasis ours.)

The succeeding sections of the act, the effect of which is to control the sale of beer and intoxicating liquors in the state, are general laws and any rule duly promulgated by the Board of Liquor Control in conformity to and consistent with

the provisions of the act is in the status of a general law because of 6064-3, 1 and 1. and (i) GC.

Sec. 6064-15 GC classifies permits which may be issued by the Board and the fees to be charged therefor. Twenty-two permits are classified in this section and our interest is directed to permits D-1, D-2, D-3, D-3a, and D-5, but especially, D-3a, the plaintiff being the holder of all such designated permits except D-5.

D-1 is a permit to sell beer of defined volume, fee $100.-00, and by the terms thereof may be issued to the owner or operator of a hotel. The provisions as to D permits are in error when they speak of a "permit of a hotel or restaurant license pursuant to §843-2 GC * * *". The reference to the applicable code number should not be 843-2 which sets forth the definition of a restaurant but 813-3 defining who shall procure licenses, etc.

Permit D-2 authorizes the sale of ale, stout and other malt liquor of designated alcoholic content. Fee, $100.00.

Permit D-3 authorizies the sale of spirituous liquor and wine at retail, as provided in the section, and further specifically provides:

"No sales of intoxicating liquors shall be made by a holder of a D-3 permit after the hour of 1 a. m. Fee $400."

Permit D-3a provides:

"In addition to all other fees herein provided, the holder of a D-3 permit, shall pay an additional fee of $400 whenever his place of business is operated after the hour of 1 a. m. and spirituous liquor is sold or consumed after such hour. The holder of such permit may sell spirituous liquors during the same hours as the holders of class D-5 permits are allowed under the Liquor Control Act or the regulations of the Board of Liquor Control. If the holder of a D-3a permit is also the holder of a D-1 permit, he may sell beer after the hour of 1 a. m. and during the same hours as the holder of a D-5 permit; if the holder of a D-3a permit is also the holder of a D-2 permit, he may sell intoxicating liquor after the hour of 1 a. m. and during the same hours as the holder of a D-5 permit. The holder of a D-3a permit may furnish music and entertainment to his patrons, subject to the same regulations as govern D-5 permit holders." (Emphasis ours.)

Permit D-5 provides:

"A permit to the owner or operator of a night club to sell beer and any intoxicating liquor, at retail, only by the individual drink in glass and from the container, for consumption on the premises where sold, only at tables where meals are served; and to sell the same products in the same manner and amounts not for consumption on the premises as may be sold under the authority of this act by holders of D-1 and D-2 permits. A person who is the holder of both a D-3 and a D-3a permit shall not be required to obtain a D-5 permit. Fee $1000."

**Sec 6064-1 GC** defines many terms employed in the Liquor Control Act, among which is Night club:

" 'Night club' means a place regularly and habitually operated for profit **after the hour of midnight** where food is served for consumption on the premises and one or more forms of amusement are provided or permitted for a consideration * * *." (Emphasis ours.)

**Sec. 6064-20 GC**, provides in part:

"Each class and kind of permit issued under authority of the Liquor Control Act **shall authorize the person therein named to carry on the business therein specified at the place** * * ** therein described, for a period of one year commencing on the day after the date of its issuance, and no longer, subject to suspension, revocation or cancellation as authorized or required by this act." (Emphasis ours.)

**Sec. 6064-22 GC**, sets out restrictions on sales of beer and intoxicating liquor which are in addition to those lawfully imposed by the rules, regulations or orders of the department, among which is:

"4. No sales of intoxicating liquor shall be made after 2:30 a. m. on Sunday or on any election day between the hours of 6 A.M. and 7:30 P.M. Nothing in this section· shall prevent a municipal corporation or village from adopting an earlier closing hour for the sale of intoxicating liquors on Sunday or to provide that no intoxicating liquors may be sold on Sunday."

Complete provision is made for the suspension, revocation or cancellation of a permit by the Board of Liquor Control for any of the causes set forth in §6064-25 GC or for the violation of any lawful rule or regulation of the Board, or other sufficient cause.

Sec. 6064-31 GC, confers the privilege of local option, as to the sale of intoxicating liquors, upon the electors of named districts among which is a municipal corporation. Sec. 6064-37 GC, provides that:

"In case as a result of such local option election, the use of a permit shall be made wholly unlawful the department shall forthwith cancel such permit," etc.

And §6064-39 GC, provides for a certain refund to a permit holder whenever the Department of Liquor Control shall cancel a permit as required by any provision of the act. There is no provision to the act for a refund of the permit fee in a situation which will develop in the instant case if the benefit conferred by the issuance to the plaintiff of its D-3a permit is removed by the enforcement of the ordinance under consideration.

Pursuant to the authority granted to the Board of Liquor Control by the act, regulation No. 30 was promulgated, which in part provides:

"No beer or intoxicating liquor shall be sold or be permitted to be consumed on weekdays on the premises of a D-3a or D-5 permit holder between the hours of 2:30 a. m. and 5:30 a. m. and no intoxicating liquor shall be sold or be permitted to be consumed on weekdays on the premises of a D-3 permit holder between the hours of 1 a. m. and 5:30 a. m."

It will be noted from the quoted definition of permit D-3a that for the additional fee of $400.00, the only privilege granted permittee is the right to operate his place of business for a longer period of time than is assured under permit D-3 and this additional is:

"Whenever his place of business is operated after the hour of 1 a. m."

A permit D-3a, if issued in connection with permits D-3, D-1 and D-2, expressly accords to the holder thereof the right to sell beer and intoxicating liquors after the hour of 1 a. m.

The language is "he may sell intoxicating beer after the hour of 1 a. m." The further language of the section, "and during the same hours as the holder of a D-5 permit", implies that there is a period after 1 A. M. during which a D-5 permit holder may operate under such permit.

What is granted and what is implied as a privilege to a Night club by the issuance to it of a D-5 permit? By the difinition of a Night club, heretofore quoted, one of the essentials of such an establishment is that it is regularly and habitually operated for profit "after the hour of midnight". Unless it so operates, it is not a Night club. Obviously, if it be issued a permit, it receives nothing whatever thereby if it cannot operate thereunder after midnight. The issuance of the permit "authorizes the person therein named to carry on the business therein specified at the place" named, §6064-20 GC and licenses the doing of that which without the permit would be illegal, State v Hipp, 38 Oh St 199, Sec 6064-14 GC, creates offenses for operating without a permit.

The sections of the ordinance under consideration, 9 and 14, completely annul and make illegal the enjoyment of the right, and the only right, which permits D-3a and D-5 accord. The plain import of the act is that the issuance of a D-5 permit grants the legal right of an establishment habitually operated after midnight to sell beer and intoxicating liquor and such permit has written into by §6064-20 GC, the authorization "to carry on the busines therein specified".

A D-3a permit holder, if he also has permits D-1, D-2 and D-3, may then, under the express provision of a general law, sell beer and intoxicating liquor after 1 A. M. and to that extent there is conflict between the sections of the ordinances, 9 and 14, fixing the closing hour at 12:00 midnight.

There is, however, the necessity of further consideration of that part of the ordinances which would, if effective, require the plaintiff to close its place of business as a D-3a permit holder sometime after 1 A. M. and before 2:30 A. M. The rights of plaintiff, during these later hours, under the Liquor Act are not so easy of determination, nor as certain, as during that period of time defined in the statute as "until after 1 a. m." Plaintiff's further rights must, in the main, rest upon the force and effect of Regulation No. 30.

We have shown that a D-3a permit holder may operate after 1 A. M., but he may also, by the terms of the statute, operate during the same hours as a D-5 permit holder, implying, at least, that there is another and extended period during which such holder may sell. But the statute is silent in fix-

ing any specific hours of operation which may be applicable to the Permit 5 holder. It does, however, set up the means by which such hours are to be fixed, in the following language of §6064-15 GC, Permit D-3a:

"The holder of such permit (D-3a) may sell spirituous liquors during the same hours as the holders of Class D-5 permits are allowed under 'the liquor control act or **the regulations of the board of liquor control.**" (Emphasis ours.)

Regulation No. 30 is responsive to this obligation enjoined upon the Board of Liquor Control.

We find no claim on the part of the City that the Legislature had not the authority to delegate this regulatory power to the Board. It is well recognized. Chief Justice Marshall in Commissioners v Public Utilities Commission, speaking on the subject said:

"The commission has neither executive nor judicial power and it can exercise only the administrative power conferred by legislation. Whatever power the legislature had could be conferred upon the Public Utilities Commission, and the Miller Act is the expression of that power."

And at page 453:

"The exercise of the power of regulation in the state of Ohio, and in every other state of the Union, through public commissions, has been so universal, * * *, that it must be admitted that the exercise of the police power has been carried to much greater lengths than the mere control of continued opration or abandonment."

See also, Mutual Film Corporation v Industrial Commission, 236 U. S. 230, 59 L. Ed. 552, 35 Su. Ct. Rep. 387. The City does urge that the regulation of the Board is not permissive but merely prohibitive.

Both permittees, D-3a and D-5, start with the basic right to sell after 1 A. M. It was incumbent upon the Board to fix the other hours during which they may operate after 1 A. M. Is it not reasonable to assume that the Board by the enactment of Regulation No. 30 intended to do that which it was authorized to do by the statute, namely, fix the further permitted hours of operation. They are stated prohibitively, viz., "shall not be sold or permitted", but are intended to be permissive. Is there any doubt that by the provisions of the

regulation it would be lawful for a D-3a permit holder to sell liquor on weekdays till 2:30 A. M. Such sale becomes illegal only if the ordinance is effective. That which is authorized by the permit is made illegal by the ordinance.

In the light of the whole Liquor Control Act and particularly the provisions of the Code as to the various classes of permits, in conjunction with the regulation, it is, in our opinion, the intention of the regulation that D-3a and D-5 permit holders may operate until the hour of 2:30 A. M.

Regulation No. 30 presents a situation somewhat like that adverted to by Judge Matthias in **Schniederman v Sesanstein, 121 Oh St 80.** Considering the question whether or not an ordinance of a municipality conflicted with the general law as set forth in §12604, GC, at page 86, Judge Matthias says:

"When the law of the state provides that a rate of speed greater than a rate therein specified shall be unlawful, it is equivalent to stating that driving at a less rate of speed shall not be a violation of law; and, therefore, an ordinance of a municipality which attempts to make unlawful a rate of speed which the state by general law has stamped as lawful would be in conflict therewith."

And at page 89:

"The traveler is told, you may not travel at an unsafe speed and you may not exceed a certain speed,—safe or unsafe, —but any other limitation upon you is prohibited. This can mean but one thing, and that is that the traveler is authorized to travel at any rate of speed he desires, provided he does not travel at an unsafe rate or exceed the limit fixed. It is merely putting in a negative and round-about way what could better have been said directly and affirmatively. With such a law a city ordinance fixing another and lower limit is plainly in conflict."

We are cited to the case of **Akron v Scalera, 135 Oh St 65,** holding that an ordinance prohibiting the sale of beer on Sunday is not in conflict with the liquor control act. The Court there applied the same test which we here make as to the validity of the ordinance and relied, in the main, upon §6064-22 GC, which expressly reserves to a municipal corporation the right to legislate relative to Sunday closing and operation. This specific relinquishment by the State to municipal corporations of the right to legislate, as to the regulation of the sale of intoxicating liquor on Sunday, is the only in-

stance in the act wherein it is suggested that any authority other than the Liquor Control Board shall, when the act itself is silent, control the hours during which intoxicating liquors may be sold.

More difficulty is presented by **Coschocton v Saba, 55 Oh App., 40,** wherein it is held that an ordinance forbidding sales under a D-3 permit after 10:00 o'clock P. M. was not in conflict with Regulation No. 30 of the Board of Liquor Control. We take a different view of the scope of the Liquor Act and of Regulation No. 30 than did the Court in the Saba case but find it in conflict only with our conclusion as to the rights of the plaintiff under the regulation, viz., as to the hours between "after 1:00 a. m." and 2:30 a. m.

Some support for our view of the question presented is found in **State, ex rel. v Carran, 133 Oh St 50,** wherein a provision of a municipal ordinance of the City of East Cleveland, Ohio, limiting licenses under permits D-3, D-3a and D-5 to one for every 3500 of the population was held to be in conflict with §6064-17 GC, giving the Board of Liquor Control the authority to issue not more than one of the permits for Classes D-3, D-4, or D-5 for each 2000 population or part thereof, in any county, city or village, because the effect of the ordinance was to limit the permits to be issued in East Cleveland to a lesser number than could have been issued by the Board of Liquor Control under the discretion vested in them by §6064-17 GC.

We are cited to one case which is strictly in point, namely, Noey v City of Saginaw, (Mich. 1935), 261 N. W. 88. The Court held in the second syllabus:

"That regulations of liquor control commission as to hours of closing held binding upon all licensees and not affected by ordinance provisions respecting hours of closing."

The Commission had adopted a regulation which provided, in part,

"No licensee, shall sell or permit the sale of any alcoholic liquor for consumption on the premises between the hours of 2 o'clock and 7 o'clock A. M., * * *."

The City of Saginaw adopted an ordinance fixing the closing hours of places licensed to sell intoxicating liquors at not later than 12:00 o'clock P. M. and until 7:00 o'clock A. M. on the following day. It will be noted that the language of the Commission in its order prohibiting the sale of intoxicating liquors between certain hours is substantially in the

same form as found in Regulation No. 30 of the Board of Liquor Control. Notwithstanding, the Court held that it accomplished permission to licensees to operate their places of business up until 2:00 o'clock A. M. The terms of the act under consideration by the Michigan Court were more explicit than the Ohio act as to the intent of the Legislature to vest the sole power and duty to control the alcohol beverage traffic and traffic in other alcoholic liquor within the state, in the Liquor Control Commission. However, the Ohio act in its entirety evinces as definite a purpose to vest the sole power and duty to control the traffic in alcoholic beverages and nonalcoholic liquor in the Board of Liquor Control as did the Michigan act. The Court deciding the case is most respectable authority.

It is urged on behalf of the City that in determining the time which shall be given application in applying the provisions of the state law or the city ordinance that which is adopted and controlling in the City of Columbus will control. It is our opinion that the time of closing is fixed by the statutes which we have discussed and that it has reference to the time adopted by the State of Ohio.

The plaintiff in this case being the holder not only of permits D-1, D-2 and D-3 but also D-3a which accords it the privileges of permit D-5 is, in our judgment, authorized to sell intoxicating liquors specified in its permits at its place of business during weekdays until the hour of 2:30 A. M., by virtue of the provisions of the Liquor Control Act and the sections thereof herein discussed, in conjunction with Regulation No. 30 of the Board of Liquor Control, with which right the sections 9 and 14 of the Columbus ordinance, heretofore set out, are in conflict and therefore unconstitutional.

Judgment accordingly.

BARNES, P. J., concurs.

GEIGER, J., concurs in judgment.

I concur in the judgment solely on account of the provisions of Permit D-3a of which the plaintiff alleges that he is the owner, as the same is found in §6064-15 GC.

If the holder of a D-3a permit is also the holder of a D-2 permit, he may sell **intoxicating liquor** after the hour **of 1:00 A. M.** and during the same hours as the holder of a D-5 permit. This is a grant by the state by the enactment of a police regulation. Under the second paragraph of the **Constitution, Section 3, Article XVIII,** the municipality has no authority to

pass an ordinance in conflict with the general law giving certain privileges to the holder of a D-3a permit, who at the same time may hold other enumerated permits.

I have been very favorably impressed by the reasoning of the trial court in this case as appears in his well considered opinion.

However it appears clear that the right granted to the holder of a D-3a permit who holds certain other permits to sell intoxicating liquors after the designated hour is a right that may not be denied to the permit holder or curtailed by the provision of an ordinance.

The other provisions of the ordinance do not conflict with any state law, and are effective restrictions.